UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


BRENNAN'S, INC.                                                    PLAINTIFF


VS                                    CIVIL ACTION NO. 3:06CV694TSL-JCS


BERT CLARK BRENNAN, AND
BLAKE W. BRENNAN, ET AL.                                         DEFENDANTS


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendants
Bert Clark Brennan and Blake W. Brennan to enjoin state court
action.  Plaintiff Brennan's, Inc. has responded in opposition to
the motion and the court, having considered the memoranda of
authorities, together with attachments, submitted by the parties,
concludes that defendants' motion should be denied.

Brennan's restaurant in New Orleans is owned by Owen E. "Pip"
Brennan, Jimmy Brennan and Ted Brennan, the three sons of the
restaurant's founder, Owen Brennan.  For approximately ten years
prior to 2006, two of Pip's sons, Clark and Blake, served as co-
general managers of Brennan's.  In March 2006, however, the two
resigned their positions at Brennan's to pursue plans to open
their own restaurants.  Their departure, particularly as it
involved their plan to pursue restaurant ventures of their own
using some form of the Brennan's name, caused turmoil in their
relationship with their uncles, as well as in the relationship

between their uncles and their father, who had allegedly

undertaken to assist his sons by, among other things, purporting

to assign to them, in his capacity as president of Brennan's,

Inc., a trademark owned by Brennan's, Inc., "Owen Brennan's."

On July 20, 2006, Pip filed suit in a Louisiana state court

against Jimmy and Ted Brennan, Owen E. Brennan, Jr. v. Theodore

M. Brennan, et al., Case No. 2006-06305, set in Section 13,

Division "J", seeking damages.  Shortly thereafter, on August 10,

2006, Brennan's, Inc. and TJO, Inc., a company owned by Ted, Jimmy

and Owen, filed a separate suit in Louisiana state court for

declaratory judgment and damages against Pip, and against 3BG,

LLC, a company established by Clark and Blake relating to their

restaurant ventures,  Brennan's, Inc., et al. v Owen E. Brennan,

et al., Case No. 2006-07330, set in Section 05, Division "K".  In

that case, Brennan's and TJO alleged that Pip's purported

assignment of Brennan's "Owen Brennan's" mark to B3G was

unauthorized and ultra vires, and demanded that the assignment be

declared invalid.

On August 18, 2006, a week after Brennan's filed its lawsuit

against Pip and B3G in Louisiana,[1] Pip amended his Division J

complaint against Jimmy and Ted to add Brennan's, Inc. as a

---

[1]     On September 15, 2006, B3G filed a notice of removal in
the Division K case, arguing the complaint gave rise to federal
question jurisdiction under the Lanham Act.  The Louisiana
district court remanded the case, finding no federal claim.

defendant, following which Brennan's, Jimmy and Ted filed a counterclaim against Pip which is identical to their complaint against Pip and B3G in the Division K case.

Four months later, on December 8, 2006, while those two cases were pending in Louisiana, Brennan's filed the present action in this court against Clark and Blake Brennan for unfair trade practices, unfair competition and misappropriation under 15 U.S.C. § 1125, for trademark dilution in violation of 15 U.S.C. § 1125(c) and Miss. Code Ann. § 75-25-25, and for unfair competition under state law, all based on allegations that Clark and Blake were pursuing plans to open New Orleans-style restaurants in Ridgeland, Mississippi and Destin, Florida under the name "Blake and Clark Brennan's Royal B." Brennan's alleged that this name was substantially and confusingly similar to Brennan's federally registered trademarks, "Brennan's" and "Breakfast at Brennan's," and it sought an injunction "prohibiting the use of 'Clark and Blake Brennan's Royal B" and any other name similar to, using and/or incorporating the BRENNAN'S mark, and prohibiting all future selling, displaying, using or advertising of services under Plaintiff's BRENNAN'S mark or any variation thereof...." In March 2007, Brennan's filed a memorandum brief in support of its request for a preliminary injunction and sought a hearing on its motion. In its brief, Brennan's argued:

> The unauthorized and intentional use of either name, "CLARK AND BLAKE BRENNAN'S ROYAL B" or "BRENNAN

3

BROTHERS," or any other name incorporating the
"BRENNAN'S" mark for restaurant services (and
specifically for virtually the same restaurant services)
in Alabama, Mississippi, and/or Florida will, without
question, unlawfully confuse and mislead consumers into
believing Defendants' proposed restaurants are sponsored
by, affiliated with, and/or related to Brennan's,
BRENNAN'S Restaurant, and the goodwill associated with
the "BRENNAN'S" mark.

Brennan's thus sought a preliminary injunction pursuant to Section

34 of the Lanham Act, 15 U.S.C. §1116, to

(1) prohibit Defendants from using any name, similar to
or incorporating the federally registered "BRENNAN'S" or
"BREAKFAST AT BRENNAN'S" marks or any variation thereof,
(2) prohibiting Defendants from partaking in unfair
competition by offering services substantially similar
to those services offered by Brennan's and associated
with BRENNAN'S Restaurant and the Brennan's marks, and
(3) prohibiting the selling, displaying, using, or
advertising of services under the federally registered
"BRENNAN'S" or "BREAKFAST AT BRENNAN'S" marks or any
variation thereof....

A three-day hearing was held before this court on April 27,

2007 on Brennan's motion, and on May 23, 2007, the court entered

its memorandum opinion and order denying the motion. Brennan's,

Inc. v. Brennan, 512 F. Supp. 2d 559 (S.D. Miss. 2007). Brennan's

appealed the court's ruling to the Fifth Circuit, and by order

entered August 23, 2007, this case was stayed pending appeal.[2]

---

[2] The court's order was affirmed by the Fifth Circuit in
September 2008, Brennan's, Inc. v. Brennan, 289 Fed. Appx. 706,
2008 WL 3091759 (5th Cir. 2008), following which Brennan's
petitioned the Supreme Court for writ of certiorari. The petition
was denied on March 23, 2009. Brennan's, Inc. v. Brennan, 129 S.
Ct. 1615 (2009).

According to defendants, from the time Brennan's filed its lawsuit against them in this court, the two Louisiana cases had remained essentially dormant until November 13, 2007, when Brennan's filed an amended petition/complaint in its Louisiana lawsuit adding Clark and Blake as defendants along with Pip and 3BG. In this amended petition, which reiterated its initial claims against Pip relating to his alleged ultra vires assignment of the "Owen Brennan's" mark, Brennan's asserted a claim against Clark and Blake for breach of fiduciary duty based on allegations regarding alleged actions taken by them while employed by Brennan's. In particular, Brennan's alleged that Blake and Clark breached their fiduciary duty to Brennan's in that, while employed as co-general managers of Brennan's, they misrepresented and/or otherwise intentionally withheld from Brennan's information regarding Pip's purported assignment and transfer to 3BG of the Owen Brennan's mark in March 2005; they continued to explore expansion opportunities as representatives of Brennan's notwithstanding that Jimmy and Ted had in March 2005 expressly revoked all authority to explore such opportunities; they withheld information regarding their impending resignations, which they had been planning for at least eight months, and resigned without notice in March 2006 during a critical stage of the post-Katrina restoration process; while still employed by Brennan's, they established relationships with potential third-party investors for

5

their personal restaurant ventures using Brennan's corporate funds to entertain said investors; they filed a trademark application for the mark "Brennan's Brothers," an infringing mark, while still employed at Brennan's; they formed a business entity, Royal B Restaurant Developments, LLC, in October 2005, while still employed by Brennan's, and on the day prior to tendering their resignations, entered into an agreement with Magnolia B, LLC, a company comprised of several unknown investors, for the purpose of developing business opportunities, including "(1) the exploitation of the Owen Brennan's mark, (2) acquiring a license in connection with exploitation of Brennan's Restaurant, (3) the purchase and exploitation of all intellectual property in connection with Brennan's Restaurant and, (4) if given the opportunity, to allow third party investors to purchase a portion of Brennan's stock...."; and on April 27, 2006, shortly after resigning from Brennan's, and while concealing their actions from Brennan's, they recorded the assignment from Pip of the Owen Brennan's mark with the United States Patent and Trademark Office and sent a demand letter to Jim Baker, a licensee of the Owen Brennan's mark, demanding that future royalty payments be made to 3BG rather than TJO. In addition to these claims against Clark and Blake, Brennan's added a count for breach of fiduciary duty against Pip, alleging that he knew of these activities by Clark and Blake and yet facilitated their activities and/or intentionally concealed

6

and withheld information regarding these activities from Brennan's.

In their present motion, Clark and Blake submit that Brennan's Louisiana lawsuit against them involves similar allegations and identical claims for relief as those asserted by Brennan's herein, and they urge this court to enjoin Brennan's from pursuing its claims against them in the Louisiana lawsuit under the authority of the All Writs Act and the Anti-Injunction Act.

The All Writs Act authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). However, the federal courts' power to issue injunctions against state court proceedings is "sharply circumscribed" by the Anti-Injunction Act, 28 U.S.C. § 2283, which prohibits federal courts from enjoining state court proceedings except in three "narrowly tailored" situations: (i) where "expressly authorized by Act of Congress," (ii) "where necessary in aid of its jurisdiction," or (iii) "to protect or effectuate its judgments" (commonly known as the "relitigation exception"), 28 U.S.C. § 2283. Energy Dev. Corp. v. St. Martin, 112 Fed. Appx. 952, 957, 2004 WL 2295865, 3 (5th Cir. 2004). The All Writs Act, "on its face, is an absolute prohibition against enjoining state court proceedings," unless the injunction falls within one of

7

three specifically defined and narrowly interpreted exceptions.
Fulford v. Transp. Servs. Co., 412 F.3d 609, 613 (5th Cir. 2005).
See also Atlantic Coast Line R. Co. v. Bhd. of Locomotive Eng'rs,
398 U.S. 281, 287, 90 S. Ct. 1739, 26 L. Ed. 2d 234 (1970) ("[A]ny
injunction against state court proceedings ... must be based on
one of the specific statutory exceptions to § 2283 if it is to be
upheld."). "Any doubts as to the propriety of a federal
injunction against state court proceedings should be resolved in
favor of permitting state courts to proceed in an orderly fashion
to finally determine the controversy." Fulford, 412 F.3d at 613
(citations omitted).

Defendants submit that two of these exceptions apply, namely,
those which permit a federal court to enjoin a state court
proceeding "in aid of its jurisdiction," and "to protect or
effectuate its judgments."[3]  Injunctions under the "necessary in
aid of its jurisdiction" exception are appropriate only in
exceptional circumstances, when "necessary to prevent a state
court from so interfering with a federal court's consideration or
disposition of a case as to seriously impair the federal court's
flexibility and authority to decide that case," Corley v. Entergy
Corp, 297 F. Supp. 2d 915, 918 (E.D. Tex. 2003) (quoting Atlantic

---

[3]     Defendants do not contend that the first exception to
the Anti-Injunction Act applies and rely, instead, on the second
and third exceptions.

Coast Line R.R. Co., 398 U.S. at 295, 90 S. Ct. 1739).[4]  "In no event may the 'aid of jurisdiction' exception be invoked merely because of the prospect that a concurrent state proceeding might result in a judgment inconsistent with the federal court's decision.  Texas v. U.S., 837 F.2d 184, 187 n.4 (5th Cir. 1988) (citing Atl. Coast Line R. Co., 398 U.S. at 295-96, 90 S. Ct. at 1747-48).  See Royal Ins. Co. of Am., 960 F.2d at 1299.  Put another way, an injunction is available under this exception only where it is "directed at conduct which, left unchecked, would have had the practical effect of diminishing the [federal] court's power to bring the litigation to a natural conclusion."  ITT Community Dev. Corp. v. Barton, 569 F.2d 1351, 1359 (5th Cir. 1978).

Under this exception, the Fifth Circuit has identified a threat to federal court jurisdiction in only two circumstances, "where a state proceeding threatens to dispose of property that forms the basis for federal in rem jurisdiction," Texas, 837 F.2d at 186 n.4 (citing Signal Properties, Inc. v. Farha, 482 F.2d 1136, 1140 (5th Cir. 1973), and "where the state proceeding threatens the continuing superintendence by a federal court, such

---

[4]     The "in aid of jurisdiction" exception in the Anti-Injunction Act parallels the language of the All Writs Act, insofar as it permits a federal court to issue an injunction "where necessary in aid of its jurisdiction," and the language is construed similarly in both statutes.  Newby v. Enron Corp., 338 F.3d 467, 474 (5th Cir. 2003).

as in a school desegregation case, id. (citing Wright & Miller Federal Practice & Procedure § 4225).  Defendants do not suggest that the latter circumstance exists in this case but claim that the Louisiana case threatens this court's quasi in rem jurisdiction so that an injunction is warranted.

Authorization for an injunction against state court proceedings where the federal and state proceedings are in rem, or quasi in rem, stems from the premise that "'if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other.'"  See Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S. Ct. 275, 83 L. Ed. 285 (1939).  That is, the authority exists in suits where, to give effect to its jurisdiction, the court must control the property.  "Where the jurisdiction over the proceedings is in rem or quasi in rem, '[t]he state or federal court having custody of such property has exclusive jurisdiction to proceed."'  Pacific Indem. v. Acel Delivery Serv., Inc., 432 F.2d 952, 954 (5th Cir. 1970) (quoting Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S. Ct. 1579, 12 L. Ed. 2d 409 (1964)).

Defendants argue that this case is a classic quasi in rem proceeding, identifying the res and "the [Brennan] name and any

10

variation thereof that could be used in a trademark/restaurant

name by Clark and Blake," and reasoning that since the ultimate

ruling in this case "will determine Clark and Blake's ability to

use the Brennan name, in whatever form, in their trademark and/or

in the name of their restaurant," then this court, to grant the

relief requested, must have jurisdiction not just over the parties

but also over the res.  The court finds that defendants' attempt

to cast this as an in rem jurisdiction case involving ownership

rights to the "Brennan's" trademark is unpersuasive.  As Brennan's

correctly argues in its response, the issue in the case is not

ownership of the "Brennan's" mark; Brennan's owns this mark, as

well as the "Breakfast at Brennan's" mark.  Rather, this issue is

whether the marks used by Clark and Blake infringe the "Brennan's"

trademark.[5]  In the absence of in rem, or quasi in rem

jurisdiction, this exception to the Anti-Injunction Act does not

---

[5]      To the extent that defendants would claim that the
parties' competing claims to ownership of the "Owen Brennan's"
mark creates in rem or quasi in rem jurisdiction, the court would
note that the validity of Pip's assignment of this mark to B3G, by
which assignment Blake and Clark purport to assert their ownership
rights, was first presented to the Louisiana court, not this
court.  See Alpert v. Riley, Civil Action No. H-04-CV-3774, 2008
WL 304742, 4 (S.D. Jan. 31, 2008) (the principle applicable to
both federal and state courts is that "the court first assuming
jurisdiction over property may maintain and exercise that
jurisdiction to the exclusion of the other") (quoting Princess
Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 466, 59 S. Ct.
275, 83 L. Ed. 285 (1939)); Charles Alan Wright, Arthur R. Miller
& Edward H. Cooper, Federal Practice and Procedure § 4221 (2d ed.
2005) ("If an action is in rem or quasi-in-rem[,] the court first
obtaining jurisdiction over the res could enjoin suits in other
courts involving the same res.").

11

apply.[6]  See Energy Dev. Corp. v. St. Martin, No. Civ. A. 98-3395,

Civ. A. 99-1793, 2005 WL 161180, 4 (E.D. La. Jan 24, 2005)

("Absent a res to be preserved and protected ..., the federal

courts have been hesitant to expand, by judicial improvisation,

the exceptions Congress has created to the general prohibition of

§ 2283."); see also Signal Properties, 482 F.2d at 1137 ("An

irreconcilable conflict between the state and federal judiciaries

would only arise if both sought to exercise authority to dispose

of the same res.").

Defendants additionally, or alternatively, urge application

of the exception which permits an injunction where necessary to

protect or effectuate a federal court's judgment.  This exception,

the "relitigation exception," "was designed to permit a federal

court to prevent state litigation of an issue that previously was

presented to and decided by the federal court" and "is founded in

the well-recognized concepts of res judicata and collateral

estoppel."  Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 147, 108

S. Ct. 1684, 100 L. Ed. 2d 127 (1988).  See also Duffy & McGovern

Accommodation Servs.  v. QCI Marine Offshore, Inc., 448 F.3d 825,

---

[6]     The court finds it unnecessary to address Brennan's
further argument that in rem jurisdiction in the trademark context
only applies in limited situations when the statute providing a
trademark cause of action specifically delineates that in rem
jurisdiction is allowed, which is not the case here, since the
statute at issue here provides for in rem jurisdiction in one
limited situation, dealing with domain names and cybersquatting,
see 15 U.S.C. 1125(d).

12

828 (5th Cir. 2006) ("'relitigation exception' allows an injunction where state proceedings threaten to undermine a federal judgment having preclusive effect under the 'well-recognized concept' of collateral estoppel"). This exception is "strict and narrow," and applies only where there has been a "final" judgment, see J.R. Clearwater Inc. v. Ashland Chem. Co., 93 F.3d 176, 179 (5th Cir. 1996) ("a lack of finality is ... fatal to a request for injunction under the Act"), and only where "the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court," Chick Kam Choo, 486 U.S. at 148, 108 S. Ct. at 1691. See also Blanchard 1986, Ltd. v. Park Plantation, LLC, 553 F.3d 405, 407 (5th Cir. 2008).

While Brennan's has suggested otherwise, an order granting or denying a preliminary injunction is considered sufficiently final for purposes of the relitigation exception. See In re Diamond B Marine Servs., Inc., No. CIV. A. 99-951, 99-984, 99-1346, 2000 WL 726885, 6 (E.D. La. June 5, 2000) (applying rule 54(b) definition of judgment, which includes appealable orders) (citing 17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4226 at 550 (2d ed. 1988)). This court's charge, therefore, is to assess the "precise state of the record" in this action to determine what was actually decided by the court's ruling on Brennan's motion for preliminary injunction, whether the

13

issue decided by this court is identical to the relevant issue in the Louisiana action, and whether the issue formed a necessary part of this court's judgment.  See Duffy & McGovern Accommodation Servs., 448 F.3d at 829 ; Next Level Commc'ns LP v. DSC Commc'ns Corp., 179 F.3d 244, 249-250 (5th Cir. 1999).

In support of their motion, defendants note that in its complaint and motion for preliminary injunction in this case, case, Brennan's sought to enjoin them from continuing their efforts to establish their own restaurant using their own "Brennan" surname, and they point out that Brennan's argued at the preliminary injunction hearing that Clark and Blake should not be allowed to use the name "Brennan Brothers," the "Owen Brennan's" mark, the name "Clark and Blake Brennan's Royal B," or use any variation of the name "Brennan," and that as damages, Brennan's sought compensation for the injury to its mark calculated by the negative financial impact that Clark and Blake's restaurant activities would have on the value of Brennan goodwill in the restaurant community.  Defendants argue that in substance, Brennan's is now seeking the very same relief against them in its Louisiana lawsuit based on essentially the same factual allegations, and that it has merely "reformatted" its theory of recovery, casting essentially the same claims as herein as claims for breach of fiduciary duty.  The court does not share defendants' view of this matter.

14

The legal theories of recovery in the federal and state actions need not be the same in order for the relitigation exception to apply. See Next Level, 1790 F.3d at 250. Here, though, not only are the legal theories different, but the allegations underlying Brennan's claims are largely distinct. Brennan's filed the Louisiana petition complaining of various actions alleged to have been taken by Clark and Blake while still employees of Brennan's which are alleged to have violated their duty of loyalty to Brennan's. This case, in contrast, involves claims of trademark infringement/unfair competition/ unfair trade practices based solely on Clark and Blake's plans to open restaurants in Mississippi and Florida using their Brennan's surname. There is some factual overlap, to the extent that Brennan's has alleged in the Louisiana case that Clark and Blake's breach of fiduciary duty involved their taking steps toward pursuing their own personal restaurant ventures while still employed by Brennan's; but the focus of the allegations in the two cases is different.

In any event, however, the relevant inquiry for this court on defendants' motion to enjoin is not whether the claims in both cases are the same or similar, but whether the Louisiana case presents an issue or issues that this court has *already decided* in ruling on the preliminary injunction motion. As to this issue, the court concludes that the relitigation exception does not apply

15

because the issues presented in the Louisiana case are not the same issues that were presented to and decided this court on Brennan's motion for preliminary injunction.

In ruling on that motion, this court noted that to prevail on its claim of trademark infringement, Brennan's had the burden to show that the Brennan's mark is protected and "that defendants' use of the mark creates a likelihood of confusion in the minds of potential consumers as to the 'source, affiliation, or sponsorship' of defendants' restaurants." <u>Brennan's, Inc.</u>, 512 F. Supp. 2d at 562. After a thorough analysis of the parties' evidence and arguments relating to this issue, the court ultimately concluded that Brennan's had failed to sustain its burden to demonstrate a likelihood of success on the merits of its claim that defendants' proposed use of the name "Clark and Blake Brennan's Royal B" for their planned New Orleans-style restaurants in Ridgeland and Destin created a likelihood of confusion with plaintiff's Brennan's mark; Brennan's had "failed to establish a likelihood of proving anything more than a possibility of limited confusion." <u>Id.</u> at 573.

While the court's ruling on this discrete issue would have little or no bearing-and certainly no potentially preclusive effect-on any issue relative to Brennan's breach of fiduciary duty claim in the Louisiana lawsuit, defendants highlight in their motion the court's statement in its opinion that "[t]hese

16

defendants [Clark and Blake] simply wanted to use their own names on their own restaurants, and undertook to do so in a way that they thought (or at least hoped) would satisfy plaintiff's [Brennan's, Inc.'s] objections to use of the Brennan name." Id. at 563. Defendants submit that the court's finding that Clark and Blake had no intent to deceive forecloses Brennan's claim in the Louisiana suit for breach of fiduciary duty. Specifically, they argue that in order to obtain relief in the Louisiana lawsuit for Clark and Blake's alleged breach of fiduciary duty, Brennan's would have to prove that Clark and Blake acted in a manner that was deceitful, and thus would have to overcome this court's finding that they acted with no intent to deceive. They conclude, therefore, that the issue of Clark and Blake's potential liability for breach of fiduciary duty has already been decided by this court.

In fact, however, this court made clear in its opinion that Clark and Blake's intent to deceive their uncles was not at issue in the preliminary injunction analysis. The court acknowledged Brennan's argument that Clark and Blake's activities while still employed by Brennan's evidenced an intent to deceive, but stated,

> the issue is not whether defendants intended to deceive their uncles/employer, but whether their actions suggest an intent to deceive prospective customers. No such intent (to deceive prospective customers) could reasonably be inferred from the mere fact that defendants, who, the Court would note, were at no time encumbered by any "covenant not to compete" were

17

> positioning themselves to start their new venture even
> before they resigned from Brennan's.

Id. at 570 n.16.  As is clear from the opinion itself, whatever
the court said about Clark and Blake's activities in leaving
Brennan's and how they left Brennan's was not determinative of
anything.  The issue was whether their use of the "Blake and Clark
Brennan's Royal B" mark violated Brennan's trademark, and in the
court's view, determining whether Clark and Blake breached a
fiduciary duty has nothing to do with whether their use of a
particular name or mark infringes the "Brennan's trademark.

That being said, the court notes that even in circumstances
where it could be applied, the relitigation exception is
permissive at the discretion of the district court, and the Fifth
Circuit has said that this discretion should be "exercised in the
light of the historical reluctance of federal courts to interfere
with state judicial proceedings."  Blanchard 1986, 553 F.3d at 407
(relitigation exception "permits, but does not mandate, that
federal courts enjoin duplicative state court proceedings").
Thus,

> [A] complainant must make a strong and unequivocal
> showing of relitigation of the same issue in order to
> overcome the federal courts' proper disinclination to
> intermeddle in state court proceedings. If we err, all
> is not lost.  A state court is as well qualified as a
> federal court to protect a litigant by the doctrines of
> res adjudicata and collateral estoppel.

Texas, 862 F.2d at 501 n.13 (5th Cir. 1988) (en banc) (internal
quotation marks omitted).  Furthermore, "[a]ny doubt as to whether

18

the order precludes subsequent claims must be resolved in favor of allowing the state court to proceed." Id. at 499.

For the reasons given, the court concludes that an injunction against Brennan's pending Louisiana state court lawsuit against Clark and Blake is not appropriate, and accordingly, it is ordered that defendants' motion to enjoin is denied.

SO ORDERED this 7th day of May, 2009.


                                        /s/ Tom S. Lee
                                        UNITED STATES DISTRICT JUDGE